## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JULIE M. QUATTLEBAUM,**
      **Plaintiff,**

**v.**                            **Case No. 5:10cv197/RH/CJK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
      **Defendant**.

---

## AMENDED REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Northern District of Florida Local Rules 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83.

      Upon review of the record before this court, the undersigned concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner therefore should be affirmed.

## PROCEDURAL HISTORY

      On September 8, 2005, claimant, Julie Melissa Quattlebaum, protectively filed an application for SSI benefits, alleging disability beginning September 1, 1992.

Claimant's application was denied initially and on reconsideration.  Following a hearing, the administrative law judge ("ALJ") issued a decision in which he found claimant "not disabled" at anytime through the date of the decision.  On May 19, 2010, the Appeals Council denied claimant's request for review.  The ALJ's decision thus stands as the final decision of the Commissioner and is now subject to review in this court pursuant to section 1383(c) of the Act.

<u>FINDINGS OF THE ALJ</u>

In his written decision the ALJ made several findings relative to the issues raised in this appeal:

1. Claimant has not engaged in substantial gainful activity since September 8, 2005, the application date.

2. Claimant has the following severe combination of impairments: low back pain, fibromyalgia, and pain in the right shoulder, neck, and knee.

3. Claimant's medically determinable mental impairments of post-traumatic stress disorder and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe.

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Claimant has the residual functional capacity to perform a reduced range of light work.  Claimant can lift/carry 20 pounds occasionally and 10 pounds frequently.  She can sit five hours and stand/walk five hours in an eight-hour workday.  Claimant can frequently perform fine manipulations (finger dexterity) and operate a motor

vehicle.  Claimant can occasionally push/pull arm and leg controls, perform gross manipulation (grasping, twisting, and handling), bend and/or stoop, and work with or around hazardous machinery.  Claimant can rarely climb stairs/ladders, balance, or reach.

6.   Claimant is unable to perform any past relevant work.  Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  Claimant, therefore, has not been under a disability, as defined in the Social Security Act, since September 8, 2005, the date the application was filed.

## STANDARD OF REVIEW

"Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards." *Olds v. Astrue*, No. 5:09cv319/RS/EMT, 2011 WL 691595, at *1 (N.D. Fla. Jan. 19, 2011); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(1)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See* 20 C.F.R. § 404.1512. "If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Olds*, 2011 WL 691595, at *2. "If the Commissioner carries this burden, the claimant must then prove [she] cannot perform the work suggested by the Commissioner." *Id.*

## CLAIMANT'S MEDICAL HISTORY

Claimant was born on September 9, 1971, making her 20 years old at the alleged onset date. (Doc. 10, p. 43). Claimant has a high school education, having obtained her GED in January 2002. (Doc. 10, p. 84). Alleging disability beginning September 1, 1992, claimant cites degenerative bone disease of the low back, depression, anxiety, and panic attacks as the cause of pain, lack of energy, and trouble functioning. (Doc. 10, pp. 73, 80, 105-09, 118). Claimant reported past work experience as a hotel housekeeper, restaurant server, and car wash attendant. (Doc. 10, pp. 80-81, 86-91, 132-34).

Prior to the date of application, claimant saw Dr. Gregg Sloan (Family Care of NW Florida), whose records show that claimant was diagnosed with depression/anxiety, tinea corporis, asthmatic bronchitis, chronic low back pain, a right ovarian cyst, right lower quadrant pain, gastroesophageal reflux disease (GERD), muscle spasms in the neck, chest wall pain, weight gain, and sinusitis. (Doc. 10-1, pp. 309-27). Medical records from Southern Bone & Joint Specialists disclose that claimant was treated for cervical and lumbar strains, sacroilitis, and narrowing of the L4-5 and L5-S1 interspace. (Doc. 10, pp. 147-53).

An MRI of the lumbar spine, taken February 15, 2003, revealed advanced degenerative disc disease at L4-5 and L5-S1 (with mild posterior spondylosis), minimal annular bulging at L5-S1 centrally, minimal facet hypertrophy at L4-5, moderate facet hypertrophy at L5-S1 with minimal canal and foraminal narrowing, type II marrow signal changes within the adjacent end-plates suggestive of trabecular microfracture/degenerative change at L4-5 and L5-S1, and minimal retrolilsthesis of L5 on S1.  (Doc. 10-1, pp. 295-96).  Records from the office of Dr. Merle Stringer show that claimant underwent injections for low back and sacroiliac joint pain between June 29, and August 17, 2004.  (Doc. 10-1, pp. 300-08).

On December 8, 2005, Dr. James Clemmons completed a questionnaire stating that claimant sometimes could not move her right shoulder or elbow without severe pain and that she had weakened mobility of the left hip.  Dr. Clemmons reported that claimant experienced muscle spasms, which were controlled with medication.  Dr. Clemmons also observed that claimant had limited gait due to pain restrictions, and that claimant could not walk on her toes or heels without pain.  (Doc. 10-1, p. 210).  On February 22, 2006, claimant presented at the emergency room with complaints of right shoulder and rib pain; claimant was diagnosed with contusions/sprains.  (Doc. 10-1, pp. 240-51).

Over the course of two visits covering the period March 20, 2006 through April 17, 2006, claimant was treated by Dr. Glenn Padgett for right subacromial bursitis, lumbar disc disease, and sinusitis.  (Doc. 10-1, pp. 252-55).  Dr. Padgett completed a Physical Capacities Evaluation, opining that claimant could lift/carry 20 pounds occasionally and ten pounds frequently, sit five hours in an eight-hour workday, and stand/walk eight hours in an eight-hour workday.  Further, Dr. Padgett believed that

claimant could frequently perform fine manipulation and operate a motor vehicle, occasionally push/pull arm/leg controls, perform gross manipulation such as grasping, twisting, and handling, bend and stoop, and work with or around hazardous machinery.  (Doc. 10-1, pp. 256-58).

Claimant saw Dr. Mutaz Tabbaa on March 19, 2007, for evaluation of chronic low back pain.  A neurological exam revealed that claimant was awake, alert, oriented, fluent, and appropriate with normal mental status exam.  A motor exam showed normal muscle tone and strength was 5/5 in all four extremities.  A sensory exam disclosed decreased vibratory sensation in both feet, and a cerebellar examination revealed normal finger-nose-finger and heel-to-shin.  Dr. Tabbaa also observed normal gait, including walking on heels and toes, as well as 90 degrees thoracolumbar flexion.  Straight leg raising did not trigger any back or radicular pain, but examination of the back revealed multiple lumbar trigger points.  Dr. Tabbaa, having reviewed cervical and lumbar x-rays, a bone scan, and MRIs of the lumbar, right hip, and right shoulder, diagnosed claimant with chronic intractable musculoskeletal pain secondary to fibromyalgia, status post-lumbar surgery at L4-5, severe exogenous obesity, history of chronic neurovascular headaches, history of post-traumatic stress disorder and depression, degenerative joint disease, essential hypertension with non-compliance with medication, and allergic rhinitis. (Doc. 10-1, pp. 286-89).

X-rays of claimant's cervical spine, dated July 26, 2007, revealed slight disc degeneration at C5-6.  (10-2, p. 362).  Dr. Ahmad Ismail, who saw claimant from July 12 through September 13, 2007, diagnosed claimant with hypertension, anxiety, depression, chronic back pain, and fibromyalgia.   (Doc. 10-1, p. 290-94).

Subsequently, Dr. Ata Ul Mohsin diagnosed claimant with low back pain/L4-5 diskectomy, right shoulder pain, sacroiliac joint pain, and right hip degenerative arthritis.  During a follow-up on October 31, 2007, Dr. Mohsin, who was prescribing Hydrocodone to claimant at the time, noted that claimant's urine tested positive for Methadone.  Dr. Mohsin thus stated that he would no longer prescribe any opioid and would offer pain management treatment without the use of such medications.  (Doc. 10-2, pp. 364-77).  On January 10, 2008, claimant again presented at the emergency room, where she was diagnosed with cervical strain, left knee sprain, arthritis, and chronic pain.  The MRI corresponding with claimant's visit showed minimal to mild disc degeneration at C5-6.  (Doc. 10-2, pp. 351-59).

DISCUSSION

Claimant raises three issues in the instant appeal.  She first contends that the ALJ failed to properly apply the standard set forth in *Brady v. Heckler* in determining that claimant's mental impairments are "non-severe."  *See* 724 F.2d 914 (11th Cir. 1984).  The ALJ concluded that claimant's "medically determinable mental impairments of post traumatic stress disorder and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe."  (Doc. 10, p. 23).  In *Brady*, the court held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  724 F.2d at 920.  Claimant, citing evidence from the medical records and her own hearing testimony, argues that she satisfied her burden to show that her mental impairments are severe.

A non-severe impairment is "merely a slight abnormality which has a minimal effect on the general ability to work." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  The claimant, as Ms. Quattlebaum acknowledges, bears the burden of showing that her impairment or combination of impairments is severe as defined by the Social Security Act.  *See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  Diagnosis alone, however, is not a sufficient basis for a finding that an impairment is severe.  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Dr. David Ghostley, a psychologist, examined claimant on November 17, 2004. Claimant, who traveled alone to the examination an estimated 45 miles, exhibited full orientation to all spheres, adequate attention, and unimpaired concentration.  (Doc. 10, pp. 163-64).  Dr. Ghostley noted that claimant's memory functioning was impaired, but opined that claimant's "[r]esponses to mathematical and serial tasks, coupled with memory functioning, fund of information, and ability to think in abstract terms, were consistent with a level of intellectual functioning estimated to be within the Average Range."  Dr. Ghostley ultimately diagnosed claimant with major depressive disorder mild, post-traumatic stress disorder, and victim of childhood sexual abuse.  (Doc. 10, p. 164).

On January 11, 2006, claimant underwent a second consultative psychological evaluation.  (Doc. 10-1, pp. 211-13).  Dr. George Horvat, a psychologist, observed that claimant's memory was normal, but that her attention was distractible and that anxiety interfered with concentration.  (Doc. 10-1, p. 212).  Dr. Horvat also diagnosed

major depressive disorder and post-traumatic stress disorder, as well as panic disorder.  Most significantly, however, Dr. Horvat stated, "If the claimant is cleared physically to return to work, there are no psychological reasons why she cannot do so."  "Her psychological treatment program," Dr. Horvat continued, "can be scheduled around her work requirements."  (Doc. 10-1, p. 213).

Nothing in the prognosis of either psychologist augers against claimant's ability to work while coping with her mental impairments.  Though the evidence of record confirms that claimant has suffered from depression and post-traumatic stress disorder most of her adult life, claimant has been able to work on a regular basis.  For instance, claimant worked as a motel housekeeper from August 1998 through March 1999, and as a restaurant server from March 2002 through February 2004.  (Doc. 10, pp. 86-91).  An ALJ, as here, may properly consider that a claimant "successfully had held employment for many years with the cognitive abilities [s]he currently possesses."  *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).

Moreover, the nature and degree of specialized mental health treatment claimant has sought does not bespeak a severe mental impairment.  "The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [a claimant's] mental capabilities disfavors a finding of disability."  *Id.*  Claimant receives medication through her primary care physician rather than a mental health expert, and, as the ALJ described, "there have been periods of time since the alleged onset date in which the claimant did not take any type of psychotropic medications."  (Doc. 10, p. 24).  Further, claimant indicated on a Social Security Administration "Function Report" that her illnesses and conditions did not affect

memory, concentration, understanding, or her ability to follow directions. (Doc. 10, p. 115). In light of the foregoing evidence, the undersigned concludes that claimant's medically determinable mental health impairments—depression and post-traumatic stress disorder—cause no more than mild restrictions in any functional area. The ALJ thus properly found that such impairments are non-severe.

Claimant argues next that the ALJ failed to properly articulate and apply the three-part pain standard as required by the United States Court of Appeals for the Eleventh Circuit (Eleventh Circuit). Claimant contends that a finding of disability should obtain, because she has presented objective medical evidence that demonstrates medically determinable back impairments and confirms the severity of her alleged pain. In particular, claimant cites a February 15, 2003, MRI, as well as the opinion of Dr. Padgett, to support her contention that the objective medical evidence confirms the severity of her alleged pain.

"The Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Id.* at 1561. "After considering a claimant's complaints of pain, [however], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

"[T]he real issue is not whether [claimant] is experiencing pain, but how severe that pain is and whether it prevents her from performing any kind of work." *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996). Failure to cite or refer to the language of the three-part test is not reversible error where the ALJ cites to 20 C.F.R. § 404.1529, "which contains the same language regarding the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

Here, after considering claimant's testimony in accordance with 20 C.F.R. § 416.929, the ALJ found reason to discredit claimant's complaints of subjective pain. First, claimant's treatment has been primarily conservative and routine in nature. Dr. Tabba, for instance, examined claimant in March 2007, recommending only cardiovascular or other exercise, water therapy, and medication. (Doc. 10-1, pp. 288-89). Allegations of disabling pain may be discounted in light of inconsistencies in the record such as conservative medical treatment. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (discrediting claimant's allegations of "pain and suffering" because the "'course of treatment for his spinal, heart and thyroid conditions during the period in issue were entirely conservative in nature'"). Further, "'[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.'" *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)). The ALJ even noted "periods of time since the alleged onset date during which the claimant did not take any medications for [her] symptoms." (Doc. 10, p. 26).

Second, claimant's daily activities, which the ALJ may consider when evaluating complaints of pain and other symptoms, are not consistent with disabling limitations and support the ALJ's determination that claimant retained the capacity to perform a range of light work. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process." (citing 20 C.F.R. § 404.1520(e))). The record discloses that claimant drives a car, shops for groceries, runs errands, and lives with and cares for her two young children, taking them to the bus stop each morning and helping them with their homework. (Doc. 10, pp. 94-97, 113; 10-2, pp. 403-05). Moreover, claimant visits with her in-laws, prepares meals on a daily basis, reads, watches television, and attends church services three times per week. (Doc. 10, pp. 94-98, 110-14; 10-2, p. 404). Such activities auger against claimant's allegations of incapacitating pain and are consistent with the conclusion that she can perform some work activities.

Additional reasons exist to reach similar conclusions. The ALJ noted that claimant's "description of symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive." (Doc. 10, p. 26). The residual functional capacity conclusions reached by state Disability Determination Services (DDS) physicians also support the ALJ's finding that claimant is "not disabled." On three different occasions, DDS physicians determined at least that claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of at least two hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push

and/or pull without limitation.  (Doc. 10-1, pp. 166, 233, 278).  Though "the opinion of a nonexamining physician is entitled to little weight if . . . contrary to the opinion of the claimant's treating physician," no such disparity is apparent here.  *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  As the ALJ observed, the record does not contain the opinion of any treating or examining physician that claimant is disabled or has limitations greater than those determined in the administrative decision.  (Doc. 10, pp. 26-27).

The undersigned does not dispute that the opinion of Dr. Padgett is supported by objective medical findings and is consistent with the evidence of record when considered in its entirety.  But "[t]he fact that two inconsistent conclusions may be drawn does not prevent an administrative agency's findings from being supported by substantial evidence."  *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996).  Here, the objective medical evidence, which in part establishes that claimant suffers from degenerative disc disease, is susceptible of multiple interpretations.  On the one hand, various diagnostic procedures suggest that claimant may experience significant low back pain.  On the other, the relatively conservative course of treatment, claimant's daily activities, and the residual functional capacity evaluations of multiple non-examining physicians constitute substantial evidence of less severe discomfort.  Because the agency's findings are supported by substantial evidence,  any extraneous evidence to the contrary is of little import to the instant calculus.  *See id.*

For her final point, claimant contends that the ALJ misconstrued pertinent record evidence in assessing claimant's credibility.   Claimant, citing a clinical assessment completed by Dr. Padgett, believes the ALJ erred by concluding that the

record does not contain any opinions from treating or examining physicians indicating that claimant is disabled or has limitations greater than those determined in the agency's decision.  (Doc. 12, p. 14).  Claimant relies on a clinical assessment of pain, in which Dr. Padgett opined that "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work." (Doc. 10-1, p. 258). Dr. Padgett, claimant notes, opined further that physical activities such as walking, standing, sitting, bending, stooping, and moving of the extremities would result in "[g]reatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of task."  (Doc. 10-1, p. 258).

Having reviewed the record in its entirety, the undersigned concludes that Dr. Padgett's assessment of claimant's pain level and accompanying limitations is not inconsistent with that rendered by the ALJ.  Significantly, Dr. Padgett did not express any belief that claimant is disabled; the doctor also questioned whether medication– a conservative form of treatment–was not the most appropriate option.   More importantly, Dr. Padgett completed a physical capacities evaluation in which he set forth specific work-related limitations that are consistent with the ALJ's residual functional capacity assessment.  (Doc. 10-1, p. 257).  Dr. Padgett opined that claimant can lift and/or carry 20 pounds occasionally and ten pounds frequently, sit and stand or walk five hours in an eight-hour workday, and frequently perform fine manipulation.  (Doc. 10-1, p. 257).  Contrary to claimant's contention, the evidence thus does support the ALJ's assertion that the record contains no medical opinion suggesting a disability or that claimant has limitations exceeding those determined in the agency's decision.

Claimant also takes issue with the ALJ's finding (part of the basis for discounting complaints of pain) that Ms. Quattlebaum "betrayed no evidence of pain or discomfort while testifying at the hearing."  (Doc. 10, p. 26).  Claimant cites a seemingly contrary observation of the ALJ, who at the outset of the hearing said, "You're [claimant] already sort of wiggling which tells me you're in a little bit of discomfort.  Please feel free to stand up at any point . . . if that will make  you feel better." (Doc. 10-2, p. 389).  Claimant does not establish with sufficient force the greater significance of the alleged error—in other words, the undersigned cannot see how such an error, assuming arguendo any occurred, contributed to the outcome of the agency's decision.  In fact, the ALJ stressed that "the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and . . . residual functional capacity." (Doc. 10, p. 26).  In the face of substantial record evidence supporting the ALJ's findings, the undersigned would not disturb the administrative decision on the basis of this alleged error alone.

Moreover, the ALJ made the observation, now emphasized by claimant, at the onset of the hearing, and made no similar remarks during the remainder of the proceeding.  The undersigned is aware of no controlling legal authority that would so wed an ALJ to a single in-hearing statement as to dictate the outcome of a pivotal credibility determination.  The possibility that subsequent observations altered the ALJ's perception of claimant's credibility should not be discounted; nor would I conclude that an open-minded finder of fact should be foreclosed from changing his mind in the face of evidence contrary to an initial inclination.  In his ultimate

decision, the ALJ here qualified the overall significance of his conclusion regarding claimant's appearance and demeanor, stating that "this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and . . . residual functional capacity." (Doc. 10, p. 26). In sum, the ALJ conducted a thorough examination of the record as a whole and properly relied on the entire body of evidence to reach a determination supported by substantial evidence. *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

Accordingly, it is respectfully RECOMMENDED:

The application for supplemental security income benefits be DENIED.

At Pensacola, Florida, this 11th day of August, 2011.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).